### Complaint of CENTRAL TRUCK LINES, Inc.

Railroad & Public Utilities Commission.

December 11, 1956.

Matt O'Brien, Macfarlane, Ferguson, Allison & Kelly, Tampa, for complainant.

J. B. Rodgers, Rodgers & Kirkland, Orlando, for respondent.

Guyte P. McCord, Jr., Assistant General Counsel, for the commission and the public generally.

WILBUR C. KING and JERRY W. CARTER, Commissioners.

On the complaint of a competing carrier, the commission issued a citation against Alterman Transport Lines, Inc. the holder of common carrier certificate # 353, charging the certificate holder with transporting for compensation by motor vehicle certain shipments of sugar from Green Brothers, Miami, to Minute Maid Corporation, Leesburg, without lawful authority.

A hearing was held as a result of the issuance of the citation and testimony was adduced to the effect that the sugar was transported in temperature-controlled equipment; that the carrier considered sugar to be a packing house product and that certificate # 353 authorized its transportation under temperature control as a packing house product. There was also testimony to the effect that it was desirable from the standpoint of the packing house that such sugar be transported under temperature control. The commission entered an order holding that the evidence was insufficient upon which to make a finding as to whether sugar is a packing house product requiring transportation in temperature-controlled equipment. In the order the commission gave notice that a subsequent hearing would be held in the matter.

Prior to the holding of a further hearing, the respondent, through its attorney, notified the commission that it did not care to further contest the matter and that it no longer contended that it had authority to transport sugar. The respondent further advised that it had, in fact, filed with the commission an application for authority to transport under an extension of its certificate # 353 foodstuffs, etc., including sugar. The application referred to was processed under docket # 4591-CCT and sought authority to transport freight consisting of food, foodstuffs, food products, and foodstuff materials, including sugar irrespective of its use and irrespective of whether or not the same requires temperature-controlled equipment.

As a result of the foregoing notice from respondent, the commission canceled all further hearings in this matter and took it under consideration on the basis of the record already made.

Before the citation was issued in this proceeding, the respondent was advised by the director of the commission's transportation department that certificate # 353 did not authorize the transportation of sugar. Whereupon, respondent immediately ceased such transportation, but appeared in response to the subsequent citation and urged that such authority was contained in its certificate. As we have pointed out, respondent subsequently withdrew from that position and applied for appropriate authority to transport sugar. At the hearing respondent admitted the alleged transportation but, as we have said, urged that it had the authority.

From the evidence adduced in this proceeding, the commission finds that certificate #353 heretofore issued to Alterman Transport Lines, Inc. does not embrace therein any authority, direct or implied, for the transportation of sugar. Respondent transported

the commodity in question without authority and in violation of its certificate and the governing statutes of the state of Florida. The record, however, strongly indicates that there was no willful violation—but rather a misinterpretation of respondent's operating rights. Under the circumstances, we feel that no penalty should be assessed for the violation.

Respondent and all other carriers should make every effort to be certain they are not violating their operating rights. In most instances where there is any question the matter can be resolved without too much trouble and inconvenience by requesting advice from the commission before proceeding.

The citation is accordingly dismissed.

ALAN S. BOYD, Commissioner (concurring specially).

The order in this cause provides this commissioner with his first opportunity to express his philosophy on the subject of intentional violations of the auto transportation law by certificated carriers. This special opinion is not written so much because of the particular instance involved—but is primarily a means of making known the writer's views.

The Railroad & Public Utilities Commission is required by law to regulate the carriage of goods for compensation over the highways of this state. Such regulation includes the issuance of certificates of public convenience and necessity to common carriers between specified points authorizing the transportation by such carriers of specific commodities. Coincident with this first requirement is the duty of the commission to *interpret* the certificates it issues—where there is any doubt or ambiguity.

The commission is empowered to enforce the laws of this state pertaining to auto transportation companies. Two methods of enforcement are provided. Commission inspectors are vested with the powers of deputy sheriffs and may make arrests for violations of the law. The commission may investigate upon its own motion or complaint, and fine, suspend or revoke certificates which it has issued for violations of the law.

The commission should in all cases pertaining to alleged violations of the law by certificated carriers exercise its own right of fine, suspension or revocation in those cases where violations are established. The power of arrest should be limited in cases involving certificated carriers except in most unusual circumstances.

In the opinion of this writer a temporary suspension of a certificate in the case of a clear-cut violation of the law would have a salutary effect upon the whole industry. Such action by the commission would result in certificated carriers contacting the commission before transporting commodities whose nature creates, doubt as to whether the carrier has such authority.

The commission does not have available sufficient funds to maintain a police force on the highways. Carriers who seek advice from the commission relative to an interpretation of their rights to haul certain commodities save themselves and the commission considerable expense and effort—which necessarily must be incurred where charges of violations are filed.